NATHANIEL SWAZEY v. THE CHOATE MANUFACTURING COMPANY.

To entitle a party to recover back money advanced to a corporation for shares of its capital stock, upon the ground of a failure to issue it according to agreement, the party must rescind the contract and demand the money before suit.

WRIT, September 14, 1867. This action was, by consent of parties, tried by the court. It was assumpsit for $400, money had and received, &c. The plea was the general issue.

The plaintiff's specification upon his general count was the following receipt, which was offered and received as evidence in the case :

EXETER, June 26, 1866.

Received of Nathaniel Swazey three hundred dollars on account of stock in the Choate Manufacturing Company, to be issued to him.
(Signed,)                    Choate Manuf. Co.
                    By JOSEPH F. WIGGIN, Treasurer.

The plaintiff and the treasurer, Wiggin, were the only witnesses examined before the court. From their testimony it appeared that plaintiff paid the aforesaid money for three shares in said corporation, which was then doing business in Exeter, and was then considered solvent and in good credit. Its stock was at par, and so continued up to September ; afterwards, when in consequence of heavy losses realized from the failure of their salesmen or consignees in Boston and other sources, the corporation became insolvent. Its stock soon began to decline, and its business is now nearly wound up.

It appeared in evidence, that, at the time the money was paid, the treasurer, who kept the books of the corporation and issued the scrip or certificates, had none then on hand, and in consequence of the president of the company, (Brayton,) residing at Providence, R. I., was not able to furnish a certificate at that time.

The plaintiff testified that the treasurer agreed to bring a certificate to his house in a few days. This was denied by Wiggin. The plaintiff says he asked for the certificate once or twice during the first six

months after the money was paid, and that Wiggin had none for him; and that he offered to sell his receipt to Mr. Wiggin in December of that year; and that he tried to sell the receipt also to Mr. Julian, but could not; that he received written notices, in April and June, 1867, of meetings of the stockholders of said corporation, upon the subject, among other things, of choosing officers, also of issuing new stock at a reduced value, to meet the wants of said company; (these notices were produced and may be referred to;) and that about this time he notified the treasurer, Wiggin, that he would take new stock at the reduced rates as a substitute for the original stock. This offer was declined by the treasurer, on the ground that he had not the legal power. Plaintiff thought he had a conversation with the treasurer in July, 1867, about the certificate, when Wiggin told him he had a certificate for three shares all ready except the clerk's certificate, who was Mr. Shute, the cashier of the bank; but he denied that this certificate was ever offered to him. Plaintiff admitted that at one time he did mislay the receipt for a day or two, and that some time before this suit was brought he made up his mind to sue for his money, and so told Wiggin.

Wiggin, in behalf of defendant, testified that he told plaintiff if he chose to pay the money for the stock he would give a receipt payable in stock, and that the money was paid and the receipt delivered without anything being said that he was to carry a certificate to him or his house; that, on the 30th day of April, 1867, he came into Wiggin's office and inquired of him if he had got the certificate ready, saying also he had received notice of the annual meeting; that he, (Wiggin,) told him he had got a certificate ready all except the clerk's signature, and offered then to go and get his signature. Plaintiff told him he had mislaid his receipt, and that he need not then go to the bank after Shute's name, as he, (Shute,) had gone to Boston, and that he would find the receipt and call again. "The next day Shute signed the certificate and I put it in my pocket. In a short time, I was riding by his place, and met him, had conversation about the stock and its value, &c. He informed me he had found the receipt. He said he was entitled to six shares rather than three; that he was entitled to the market value of the stock, understanding that some had been sold at $50 per share. I told him the par value was fixed at $100 per share, and no stock could be issued at a less rate by me as treasurer. At that time I had his certificate in my pocket-book, and made a motion to take it out, and plaintiff said he could not take it; that he wanted to see the directors and talk with them. Again met him a short time before the suit was brought. He told me then he had been advised he could recover back the money, but was advised to see me before he commenced the suit. He stated the grounds of his claim; he stated to me that I had agreed to bring the certificate to him and had not done it. I told him what had taken place, and asked him if he would have taken it if it had been ready April 30th. He said he probably would not. He produced the receipt. I read it, and then told him the certificate for three shares was then ready for him."

The defendant's day-book shows that the plaintiff was duly credited

with the aforesaid $300 on the stock account, the entry being made Aug. 30th, 1866, which was the same day carried to the stock account in the ledger. The defendant's stock ledger and the certificate both show that the time or date of the issue of said certificate was April 30, 1867. The number of said certificate was 203, and duly signed by the officers of the said corporation. Upon the consideration of the aforesaid testimony and all the facts of the case, the court find their verdict for defendants. But if the whole court shall be of the opinion, upon this statement of the evidence, that the defendant should have furnished the plaintiff with a certificate of his stock at an earlier period of time, or within a more reasonable time, as contended by plaintiff, and that this action can be maintained, then in such case the court find for the plaintiff the sum of $333.

*J. J. & C. U. Bell*, for plaintiff.

*W. W. Stickney & Wiggin*, for defendants.

BELLOWS, J. By the terms of the receipt, the defendants were to issue to the plaintiff the stock of the corporation to the amount of the three hundred dollars paid by him, which, as the case finds, was three shares; and it may fairly be inferred that defendants were to deliver to the plaintiff the proper evidence of the issuing of that stock; that is, the usual certificates. On the refusal of the defendants to issue the stock, the plaintiff might maintain a suit on the contract and recover damages for the breach of it; or he might rescind the contract and recover back the money so paid; but if he elect to do the latter, he must give notice to the other party and demand the money. *Weeks* v. *Robie*, 42 N. H. 316; *Judge of Probate* v. *Stone*, 44 N. H. 593.

So, where defendant gave a receipt for money to be applied on a note, it was held that an action could not be maintained to recover back the money until defendant had been requested, and had refused, to apply the money. *Sawyer, Admin'r*, v. *Tappan*, 14 N. H. 352, 359.

If, then, under the circumstances, the plaintiff had the right to rescind the contract, he must have done it and demanded the money before suit; and whether he did or not, was one of the questions tried by the court, and that having been decided against the plaintiff is fatal to this suit.

We do not understand that this question of fact was transferred, but only the question, whether, as matter of law, the defendants were bound to deliver the stock to the plaintiff at some earlier period, without regard to a demand; and if so, whether plaintiff could maintain this suit; but, for the reasons before suggested, we think an election to rescind and a demand were necessary, and therefore there must be

*Judgment on the verdict for the defendants.*